The fact that testator read over a will and was in full possession of his faculties at the time of the execution does not rebut the presumption of undue influence where the will was drafted by one standing in a fiduciary relation to the testator and who by it was benefited.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, §§ 422–426, 433.]

2. SAME.

Evidence *held* to show that the will and codicil were executed under undue influence.

In the matter of the probate of the last will of Edwin E. Thompson, deceased. Probate refused.

Clark & Taylor, for proponent.
Chase, Cahoone & Regan, for contestant.
William J. Driscoll, special guardian.

CHURCH, S. The present proceeding is the result of an application on behalf of the proponent for leave to introduce further evi-

dence on the petition to probate the will and two codicils of the deceased which had been refused probate.

It is apparent that the theory upon which probate of these instruments was refused is misunderstood, and, in the consideration of the additional evidence which has been offered, it is perhaps well to restate the reasons that led to the refusal of the probate of such instruments. The principle governing the admission of a will to probate is that, when the proponent proves by the subscribing witnesses that that the provisions of the statute in relation to the execution of the will have been complied with, then the burden of establishing incompetency or undue influence rests upon the contestant, and, unless he establishes these facts, the will should be admitted to probate. But the rule has also been well settled that where it appears that a will is drafted by a person standing in a fiduciary relation to the testator, by the provisions of which the draughtsman thereof is benefited to a greater or less extent, then the ordinary proof required of a proponent is insufficient, and the law will presume undue influence without any specific proof offered on the part of the contestant, and the burden is shifted upon the proponent, not only to establish the factum of the will, but also to show by other evidence that, in fact, there was no undue influence exercised in the case in question This rule is elementary in its character and has been upheld so frequently and so repeatedly that it is unnecessary to quote extensively from the cases on the subject. It is, perhaps, best stated, however, in the case of Marx v. McGlynn, 88 N. Y. 358, in which the court say as follows (page 371):

"But there are certain cases in which the law indulges in the presumption that undue influence has been used, and those cases are where a patient makes a will in favor of his physician, a client in favor of his lawyer, a ward in favor of his guardian, or any person in favor of his priest or religious adviser, or where other close confidential relationships exist."

In the case at bar the drafter of the will was a lawyer, not admitted to practice in this state, but, in consequence of his legal education and admission to the bar in other states, capable of acting in that capacity in a matter of this kind. This lawyer was a partner of the deceased and also the deceased's brother. It is apparent, therefore, that he came completely within the doctrine of Marx v. McGlynn, not only being the lawyer of the deceased, but also a person in a close, confidential relation with him. And it appears by the will and codicils under consideration that such lawyer, adviser, and brother of the deceased is made the beneficiary of all the estate of the deceased, subject to certain trust provisions, and, in addition, the will and codicils distinctly confirm and settle the business status of the deceased and such beneficiary.

The reason for the above rule is based upon public policy, and the application of it is in no way dependent upon the question of whether the testator is in full possession of his faculties or not. It is on a parity, in many respects, with the rule governing many conditions in our law that are intended to disqualify all persons acting in a fiduciary capacity from, in any way, reaping a benefit from the trust

property. Evidences of these conditions are shown in the provisions that prohibit a guardian from purchasing from his ward, an executor from purchasing, even at a public sale, property of the deceased; and this conduct has been forbidden, notwithstanding that it was done openly by the trustee, for a full consideration and with the knowledge and approval of the cestui que trust. In the particular instances of the application in the drawing of a will, the rule is not carried to the strict extent that it is in the cases above indicated, as the burden of proof is simply shifted onto the shoulders of the proponent to show that the act in question was, beyond all controversy, the wish and intent of the deceased. It also goes without saying that, while this presumption of undue influence applies in all of the various instances cited in Marx v. McGlynn, the character of the rebutting evidence must vary with the circumstances, as it follows that a will made by a person in favor of his physician may be perfectly good if it is shown that the physician in no way had anything to do with the making of the will; whereas, a will, which is the product of the lawyer of the testator and also a man who was in complete possession of all the facts attending the testator's business, and who actively superintended the drawing and execution of the same, would naturally be the subject of very much stricter scrutiny.

With this general proposition of law to be applied to the case under consideration, the question becomes almost exclusively one of fact as to whether the additional facts introduced by the proponent are sufficient to rebut and contradict the presumption of undue influence. The evidence on the rehearing seems to be directed, almost solely, to an endeavor to show that the deceased was not of unsound mind, and that he had read over the papers in question and therefore had a knowledge of the contents of the same. But the mere fact that the testator had read over the provisions in the will and that he was of sound mind, in my opinion, falls short of the degree of proof required of a proponent in order to rebut the presumption of undue influence. Under the circumstances in this case, the deceased was compelled to rely upon the representations of his brother as to the character of the business relations between them, the legal effect of such relations, and also the legal effect of the will and codicils. It is stated that the will is the result of notes made by the testator himself. The evidence shows, however, that, while such notes were placed in the safe by him, yet the dictation of the will was exclusively the work of the executor, and no effort has been made to show that the original notes, made in the handwriting of the deceased, have been destroyed, or to establish what are their contents. A considerable portion of the proponent's evidence on the rehearing has been directed to attempts to show the reason for not offering this will for probate at an earlier time by the executor. Much of this evidence was incompetent, as the rulings thereon will indicate. It may be briefly said that it simply shows that, from the latter part of January, 1905, until about the time that the papers applying for probate were executed, the executor was incapacitated by a serious illness from taking proceedings to probate the will. No adverse criticism is or could be made of any neglect of his during this period,

and, by reason of the slight delay before the proponent was taken sick, no prejudice exists or should exist against him.

There is one phase of the evidence which, in my judgment, is material to the point in issue, namely, the introduction in evidence of the articles of copartnership between the deceased and the proponent, indicating that the same was to expire in January, 1904, and also the agreement executed in January, 1904, which by its terms confirmed such dissolution of partnership and adjusted the rights of the parties thereto. This evidence is confirmatory of the recitals in the codicils referring to the business relations between such parties. But in the various cases in which this doctrine of the presumption of undue influence is laid down there is no limitation of the rule by reason of the extent of the testamentary provsion. And we can well understand why the law recognizes no such distinction, as the complications and embarrassments which would arise if this were admitted are very numerous, and it is also apparent that such complications and embarrassments would be cast entirely in the path of the disinherited natural object of the bounty of the testator.

There is one fact that has not been successfully explained by the proponent, namely, that, if this will and codicils have no effect except to put the insurance moneys in the hands of the executor for the benefit of the wife and child of the deceased, then the only distinction between these papers being admitted to probate and the deceased dying intestate is that the executor will not have control over the expenditure of the money due to the widow, and that, in place of his control over the money to be expended for the child, there will exist the control of the surrogate. If this is all that the deceased intended to accomplish, the necessity for this involved will and its additional codicils and also the apparent intense desire on the part of the executor to have the instruments admitted to probate remains unexplained.

In view of these circumstances, therefore, and after giving careful consideration to the additional evidence offered by the proponent, it is apparent that the proponent has failed to make the proof required, and such will and codicils should be refused probate.

Probate refused.